**In re RUMMEL.**

[Cite as *In re Rummel*, 194 Ohio App.3d 22, 2011-Ohio-2748.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–1002.

Decided June 7, 2011.

---

Lerner & Shea, L.L.C., Robert E. Shea, and Michael J. Lerner, for appellant.

BROWN, Judge.

{¶ 1} Mark D. Rummel, petitioner-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in which the court overruled his objections to the magistrate's decision. Jae L. Rummel (n.k.a. Pickard), petitioner-appellee, has not filed an appellate brief.

{¶ 2} The parties' marriage was dissolved on January 15, 1998, by a dissolution decree. The parties had two children together: Angelica, born May 26, 1984; and Candice, born July 29, 1986. The dissolution decree provided that the father was to pay child support to the mother in the amount of $45 per week, per child, which was a downward deviation from the statutory guideline amount of $53.35 per week, per child.

{¶ 3} On November 14, 1994, the trial court modified the father's child-support obligation to zero, based upon the father's disability and the children's receipt of social security benefits due to his disability. The order was effective August 26, 1994.

{¶ 4} In February 2003, the Franklin County Child Support Enforcement Agency ("CSEA") conducted a review of child support in this case. Because Angelica had been emancipated as of this date, CSEA calculated the father's child-support obligation for Candice only at the statutory guideline amount of $332.18 per month, effective March 1, 2003.

{¶ 5} Upon the emancipation of Candice, on June 29, 2008, CSEA issued findings that recommended that child-support terminate effective July 29, 2004; calculated child-support arrearage to be $31,658.29, plus a processing charge arrearage of $801.48, effective May 27, 2008; and recommended that the arrearage be liquidated at a rate of $332.18 per month. Neither the father nor the mother objected, and the trial court adopted the recommendation of CSEA on August 8, 2008.

{¶ 6} During this time, the father apparently also had in effect a child-support order issued in Muskingum County for $383.14 per month for the support of

another child, who was 16 years old as of April 23, 2010. The father had an arrearage in the Muskingum County case of approximately $9,000.

{¶ 7} On September 11, 2009, the father filed a motion to modify child support and determine the correct arrearage and appropriate liquidation rate. The parties agreed to reduce the arrearage by $5,562, which represented the social security payments paid to the children due to the father's disability, thereby reducing the arrearage to $22,686.60, effective April 23, 2010. The issue of the appropriate liquidation rate was heard by a magistrate, who recommended that the current liquidation amount remain the same.

{¶ 8} On May 12, 2010, the father filed an objection to the magistrate's decision. After a hearing on the objections, the trial court overruled the father's objection on September 22, 2010. The father appeals the judgment of the trial court, asserting the following assignments of error:

[I.] The trial [court] committed prejudicial error by ordering appellant to pay monthly child support arrearage in an amount greater than permitted by federal statute.

[II.] Ohio Revised Code Section 3123.14 is unconstitutional and inconsistent with the Federal Consumer Credit Protection Act.

{¶ 9} The father argues in his first assignment of error that the trial court erred when it ordered him to pay child-support arrearage in an amount greater than that permitted by the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. 1673(b). The father contends that pursuant to R.C. 3113.21(D)(1)(a), a wage withholding order cannot require an employer to withhold more of the garnishee's earnings than permitted under the CCPA.

{¶ 10} R.C. 3113.21, which is cited by the father, was repealed in 2001. The analogous provisions to R.C. 3113.21(D)(1)(a) are now found in R.C. 3121.03(A)(1), which provides:

To the extent possible, the amount specified to be withheld shall satisfy the amount ordered for support in the support order plus any arrearages owed by the obligor under any prior support order that pertained to the same child or spouse, notwithstanding any applicable limitations of sections 2329.66, 2329.70, 2716.02, 2716.041, and 2716.05 of the Revised Code. *However, in no case shall the sum of the amount to be withheld and any fee withheld by the payor as a charge for its services exceed the maximum amount permitted under section 303(b) of the "Consumer Credit Protection Act," 15 U.S.C. 1673(b).*

(Emphasis added.)

{¶ 11} The CCPA, 15 U.S.C. 1673, entitled "Restriction on garnishment," sets forth the maximum allowable garnishment. Section 1673(b) provides:

(2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed—

(A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and

(B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week;

except that, with respect to the disposable earnings of any individual for any workweek, the 50 per centum specified in clause (A) shall be deemed to be 55 per centum and the 60 per centum specified in clause (B) shall be deemed to be 65 per centum, if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek.

{¶ 12} 15 U.S.C. 1672, provides the following definitions:

(a) The term "earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

(b) The term "disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.

{¶ 13} The father argues that his arrearage liquidation and child-support withholdings exceed 65 percent of his monthly net income of $1,200. Thus, the father contends, his obligation is in violation of both the Ohio Revised Code and Section 303 of the CCPA, 15 U.S.C. 1673.

{¶ 14} The father fails to address the trial court's main basis for denying his motion to modify. The trial court found that the doctrine of res judicata precluded the father's request to revisit the amount of the order. The doctrine of res judicata bars further litigation of issues that were raised previously or could have been raised previously. *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178. Here, the trial court found that the father had the opportunity to litigate the liquidation amount in prior proceedings but failed to request an administrative hearing or object to the recommendation of CSEA. The court noted that a final, appealable order was entered by the court that journalized the findings and recommendations of CSEA on August 8, 2008. The father does not contest the court's findings in this respect, and our own review of the record supports the court's findings. The

record reveals that on June 26, 2008, CSEA filed recommendations establishing the support and processing charge arrearage and recommending that the arrearage be liquidated at $332.18 per month. The first section of CSEA's recommendations indicates:

IMPORTANT: THIRTY (30) DAY OBJECTION TIME

THE CONCLUSIONS OF THIS INVESTIGATION WILL BE ISSUED AS A COURT ORDER UNLESS YOU OBJECT. IF YOU OBJECT TO THE INVESTIGATION RESULTS, THE OHIO REVISED CODE (ORC) REQUIRES YOU TO RESPOND WITHIN THIRTY (30) DAYS AFTER RECEIPT OF THIS NOTICE. AN "OBJECTION TO CSEA INVESTIGA-TION" FORM IS ENCLOSED FOR YOU TO USE WHEN OBJECTING.

(Boldface and Capitalization sic.) The father failed to file objections to CSEA's recommendations. On August 8, 2008, the trial court issued an entry approving and adopting CSEA's June 26, 2008 recommendations and making them an order of the court. The father failed to file an appeal of the trial court's judgment. Therefore, because father failed to object to CSEA's recommendations and failed to appeal from the trial court's adoption of those recommendations, we concur with the trial court that res judicata prevents the father from contesting the liquidation amount.

{¶ 15} Notwithstanding res judicata, even if we were to address the merits of the father's argument, we would find it unavailing. With regard to Section 303 of the CCPA, 15 U.S.C. 1673, the trial court rejected this argument, concluding that R.C. 3121.03(A) and Section 303 of the CCPA prevent a court only from withholding wages in excess of the federal garnishment restrictions but do not restrict the amount a court may order to liquidate a support arrearage, which is the only relief father requested in his September 11, 2009 motion. The court further found that the father's weekly disposable income was $552.84 per week (based upon a wage of $17 per hour for 160 hours per month, with 18.7 percent in state and federal taxes deducted). Thus, the court found that the maximum garnishment was 60 percent of $552.84, or $331.70 per week. The court further found that the father's withholding in the current case was $76.66 per week, and that his withholding in the Muskingum County case was $88.42 per week, which together were below the maximum allowable garnishment of $331.70 per week.

{¶ 16} The father argues that his aggregate withholdings exceed 65 percent of his monthly net income, which he contends the magistrate and the parties agreed was $1,200. Even if we could address the merits of the father's argument, we would be confronted with myriad problems fatal to his claim. First, the father does not calculate any numbers in his appellate brief to demonstrate that the orders at issue exceeded the limits imposed by Section 303(b) of the CCPA, 15 U.S.C. 1673(b), and the transcript from the magistrate's

hearing provides incomplete data. Second, this court has no documentary evidence before it, such as a pay stub or W–2, to perform its own calculations as to what the father's "disposable earnings" are under Section 303(b) of the CCPA. Third, the record does not reveal that the magistrate and parties agreed that his monthly "net income" was $1,200. At no time during the magistrate's proceedings did the mother agree to this amount. Furthermore, although the magistrate did mention this $1,200 figure as the father's "normal bring home" at one point during the hearing, the magistrate did not indicate that this figure is father's "disposable earnings" under Section 303(b) of the CCPA, and, as discussed in the next point below, it clearly is not.

{¶ 17} Fourth, the $1,200 monthly "net income" figure urged by the father upon appeal and before the magistrate already has subtracted from it the liquidation amount ordered in the current case, as well as the $383.14 per month in child support ordered in Muskingum County. The father presents no authority for the proposition that "disposable earnings," as used in Section 303(b) of the CCPA, should exclude these amounts. To arrive at the father's "disposable earnings," the trial court in the present case subtracted the father's state and federal taxes from his gross income, and then multiplied that amount by the maximum statutory garnishment percentage allowed to arrive at the maximum withholding amount permitted. We agree with the trial court that to arrive at "disposable earnings," as used in Section 303(b), a court should not first subtract from gross income prior support orders in other cases or the liquidation or support order at issue in the current case. See, e.g., *Lough v. Robinson* (1996), 111 Ohio App.3d 149, 152, 675 N.E.2d 1272, fn. 2 (the term "disposable earnings," for purposes of Section 303(b) of the CCPA, does not include deductions for support orders); *Seegert v. Zietlow* (1994), 95 Ohio App.3d 451, 466, 642 N.E.2d 697 (finding "disposable earnings," for purposes of Section 303(b) of the CCPA, was gross earnings minus relevant taxes and union dues); *Nurse v. Portis* (1987), 36 Ohio App.3d 60, 520 N.E.2d 1372, paragraph two of the syllabus (to determine net disposable income for purposes of Section 303(b) of the CCPA, court did not consider prior support orders); *Mizell v. Mizell* (Dec. 24, 2001), 7th Dist. No. 00 JE 30, 2001 WL 1667865 (court compared the monthly arrearage liquidation amount to the father's total monthly Social Security check to determine whether the limits in Section 303(b) of the CCPA were exceeded); *Slivka v. Slivka* (Mar. 7, 1996), 8th Dist. No. 69146, 1996 WL 100854 (to determine net disposable earnings for purposes of Section 303(b) of the CCPA, the court subtracted federal, state, and local taxes from the garnishee's annual gross income); *Gillespie v. Gillespie* (June 30, 1994), 8th Dist. No. 65518, 1994 WL 317785 (to arrive at "disposable earnings" under Section 303(b) of the CCPA, court used net income from father's W–2).

{¶ 18} The trial court used the 60 percent figure from Section 303 of the CCPA, 15 U.S.C. 1673, while the father uses the 65 percent figure. We agree that the father's 65 percent figure is the correct percentage to use, because the liquidation order at issue here is for arrearages incurred before the 12–week period discussed in the exception found in Section 303(b), 15 U.S.C. 1673(b)(2)(B). However, the disagreement about the appropriate percentage to use makes no difference in this case because the orders at issue are not near either 60 or 65 percent of the father's disposable earnings. We already outlined the trial court's calculations using the lower 60 percent figure, and the trial court's calculations demonstrate the orders here did not come close to that limit imposed by Section 1673(b). Therefore, we find that even if res judicata did not preclude the father from contesting the liquidation order at issue here, his arguments would still be without merit. For all of these reasons, the father's first assignment of error is overruled.

{¶ 19} The father argues in his second assignment of error that R.C. 3123.14 is unconstitutional and inconsistent with Section 303 of the CCPA, 15 U.S.C. 1673. However, the father's constitutionality argument must fail because there is no conflict between R.C. 3123.14 and Section 1673. R.C. 3123.14 provides:

If a withholding or deduction notice is issued pursuant to section 3121.03 of the Revised Code to collect an arrearage, the amount withheld or deducted from the obligor's personal earnings, income, or accounts *shall be at least equal* to the amount that was withheld or deducted under the terminated child support order.

(Emphasis added.)

{¶ 20} The father's contention is that R.C. 3123.14 conflicts with 15 U.S.C. 1673 because R.C. 3123.14 mandates that the amount withheld for any arrearage must be at least equal to the amount that was withheld under the terminated support order, while Section 1673 limits the amount of a garnishment order to a percentage of the garnishee's disposable earnings. We do not agree that there is a conflict. R.C. 3123.14 explicitly pertains to withholding notices issued pursuant to R.C. 3121.03, and 3121.03(A)(1), as discussed above, specifically limits any withholding order issued pursuant to that section to the limits imposed by Section 303 of the CCPA. Thus, the mandate in R.C. 3123.14 that the withholding notice to collect an arrearage must be at least equal to the amount that was withheld under the terminated support order is still limited by the terms of R.C. 3121.03 and Section 303 of the CCPA, 15 U.S.C. 1673. Therefore, because there is no conflict between R.C. 3123.14 and Section 303 of the CCPA, the father's argument that R.C. 3123.14 is unconstitutional is without merit. For this reason, the father's second assignment of error is overruled.

30

{¶ 21} Accordingly, the father's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.

Judgment affirmed.

FRENCH and TYACK, JJ., concur.