MORROW, APPELLANT, *v.* BECKER, APPELLEE.

[Cite as *Morrow v. Becker,* 138 Ohio St.3d 11, 2013-Ohio-4542.]

*Domestic relations—Child support—Gross income—Motion for modification—*
*Employer-provided benefits—Company car, car insurance, and cell phone*
*provided by employer may be included in gross income as defined in R.C.*
*3119.01(C)(7)—Reference in R.C. 3119.01(C)(13) to company cars and*
*like items as includable in gross income when received from self-*
*employment, proprietorship of a business, or joint ownership of a*
*partnership or closely held corporation does not exclude such items from*
*gross income when received from employer in other contexts.*

(Nos. 2012-1674 and 2012-1898—Submitted June 11, 2013—Decided
October 16, 2013.)

APPEAL from and CERTIFIED by the Court of Appeals for Medina County,
No. 11CA0066-M, 2012-Ohio-3875.

————————————

**PFEIFER, J.**

{¶ 1} This appeal comprises two cases: a discretionary appeal, case No. 2012-1674, and a certified conflict, case No. 2012-1898. The cases were consolidated, and the parties were requested to brief the following issue:

> Whether company benefits, such as a company car, can be included as income for the purpose of child support calculation if the benefits the party receives do not come from self-employment, as proprietor of a business, or as a joint owner of a partnership or closely held corporation.

134 Ohio St.3d 1415, 2013-Ohio-158, 981 N.E.2d 883.

{¶ 2}  In his discretionary appeal, appellant, Jeffrey Morrow, offers a single proposition of law, which is substantially similar to the certified question:

> Employment benefits are includable income for purposes of calculating child support only if the party receiving those benefits is self-employed, the proprietor of a business, or is a joint owner of a partnership or closely held corporation, pursuant to R.C. 3119.01.

{¶ 3}  For the reasons that follow, we affirm the judgment of the court of appeals and answer the certified question in the negative.

## BACKGROUND

{¶ 4}  Appellant, Jeffrey Morrow, and appellee, Sherri P. Becker, are the biological parents of two minor children.  Through the years, they have contested many issues in court, including visitation, child support, restraining orders, and contempt.  We will not describe the many different issues that have been litigated, except to the extent necessary to resolve the single issue before us.

{¶ 5}  Morrow was ordered to pay child support of $2,198.05 per month plus a 2 percent processing fee, pursuant to a judgment entry and order filed March 1, 2006.  Two and half years later, Morrow moved to modify his child-support payment.  After a hearing, a magistrate concluded, based on various modifications, that Morrow would owe child support of $2,085.42 per month.  The magistrate stated, however, that because the difference between that amount and the amount Morrow was currently paying was less than 10 percent, a change of circumstance had not occurred, and Morrow's child-support obligation would not be reduced.  *See* R.C. 3119.79(A) (change of circumstance sufficient to require modification is established when recalculated amount of child support differs from existing amount by more than 10 percent).

{¶ 6} After a hearing and over Morrow's objections, the trial court adopted the magistrate's decision.

{¶ 7} Morrow appealed, arguing, among other things, that the trial court erred when it included certain employer-paid benefits in his gross income for purposes of calculating his child-support obligation. The court of appeals affirmed the trial court's decision on that issue, determining that the value of a car, car insurance, and cellular phone and phone service that Morrow's employer had provided to him should be included in his gross income. The court of appeals concluded that because Morrow would have otherwise had to pay for those items with his own funds, "the trial court did not abuse its discretion by including the value of these benefits as part of [Morrow's] gross income." *Morrow v. Becker,* 9th Dist. Medina No. 11CA0066-M, 2012-Ohio-3875, ¶ 33. But the court determined that it was error to include in Morrow's gross income the full value of employer-provided Ohio State University football tickets, because the full value of the tickets did not accrue to Morrow. It concluded, however, that the error was harmless. *Id.* at ¶ 34.

{¶ 8} We granted Morrow's discretionary appeal. We also determined that a conflict exists and consolidated the cases.

### ANALYSIS

{¶ 9} Matters involving child support are reviewed under an abuse-of-discretion standard. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997). Under an abuse-of-discretion standard, a lower court decision will not be reversed for mere error, but only when the court's decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980), citing *Steiner v. Custer*, 137 Ohio St. 448, 451, 31 N.E.2d 855 (1940).

{¶ 10} With respect to the sole issue before us, the trial court stated: "The Magistrate properly considered work-related benefits when computing the Plaintiff's annual salary for child support purposes." Nothing in the record or the

judgment entry of the trial court indicates that that decision was unreasonable, arbitrary, or unconscionable. To the contrary, the entirety of the trial court's opinion suggests that it appropriately considered relevant statutory and case law.

{¶ 11} The amount of a parent's child-support obligation is calculated by using a child-support computation worksheet. R.C. 3119.023. The starting point is parental income: either gross income (for those employed to full capacity) or gross income plus potential income (for those not employed to full capacity). R.C. 3119.01(C)(5). As the trial court noted, the statutory definition of "gross income" is expansive. "Gross income" is defined as "the total of all earned and unearned income from all sources during a calendar year." R.C. 3119.01(C)(7). The provision includes many examples of items that constitute gross income, such as commissions and dividends. The statutory scheme also includes items that are specifically excluded from "gross income," such as means-tested government assistance and nonrecurring income. None of the employer-paid benefits at issue in this case are listed in the examples of included and excluded items.

{¶ 12} But Morrow argues that items such as company cars are to be considered part of gross income only if the recipient is self-employed, a proprietor of a business, or a joint owner of a partnership or closely held corporation. He bases this argument on R.C. 3119.01(C)(7), which defines "gross income" as including "self-generated income." R.C. 3119.01(C)(13) defines "self-generated income" as

> gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. "Self-generated income" includes expense reimbursements or in-kind payments received by a parent from self-employment, the

4

operation of a business, or rents, including company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses.

{¶ 13} Morrow contends that because the only statutory reference to company cars and other in-kind items is in the context of "self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation," the General Assembly meant to exclude such items from gross income when they are received outside that context. In support, he cites *Spier v. Spier,* 7th Dist. Mahoning No. 05 MA 26, 2006-Ohio-1289.

{¶ 14} We find nothing in the statutory scheme to support that conclusion. To be sure, R.C. 3119.01(C)(13) states that "self-generated income" includes company cars. That is a far stretch from stating that company cars cannot be part of gross income unless they are from self-generated income.

{¶ 15} The record indicates that Morrow did not have a car, car insurance, or phone, other than the car, car insurance, and phone provided to him by his employer. Based on that understanding, the trial court, after reviewing case law, concluded that "it was reasonable to include the value of these benefits in the Plaintiff's gross income." We agree. If his employer did not provide a car, Morrow would have had to purchase or lease one on his own, using his own funds. Accordingly, it is sensible to conclude that the provision of a car is no different from the provision of funds to buy or lease a car. Either way, the person receiving the benefit effectively has a higher income. *See Merkel v. Merkel*, 51 Ohio App.3d 110, 112, 554 N.E.2d 1346 (1988) (where the court concluded that free housing is a significant benefit and not including it in gross income would be inequitable). We reach the same conclusion with respect to the car insurance and cell phone.

**{¶ 16}** The football tickets are different. Morrow did not receive the full benefit of the tickets' value because they were not given to him primarily for his own use, but rather as perks for him to pass on to employees or as gifts for business associates. Even so, we are unable to conclude that the trial court's decision to include the value of the tickets as part of his gross income was unreasonable, arbitrary, or unconscionable. The value of the tickets constitutes only about 1 percent of the gross income that the trial court calculated. Accordingly, like the court of appeals, we are persuaded that if including the tickets in gross income was error, that error was harmless.

**{¶ 17}** The definition of "gross income" is expansive enough to encompass the benefits at issue in this case.

### CONCLUSION

**{¶ 18}** We conclude that the trial court's decision to include certain employer-paid benefits in Morrow's gross income when determining whether to modify his child-support obligations was not an abuse of discretion. We also answer the certified question in the negative. Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents.

_____

**O'DONNELL, J., dissenting.**

**{¶ 19}** Respectfully, I dissent.

**{¶ 20}** The majority concludes that the trial court did not abuse its discretion when it included certain employer-provided benefits in Jeffrey Morrow's gross income in deciding whether to modify child support payments.

In my view, its conclusion fails to account for the value of the business use of the vehicle, which should be excluded from personal income.

{¶ 21} In this case, the court of appeals excluded the value of the Ohio State University football tickets from Morrow's gross income because it determined that the tickets were used in connection with business. *See Morrow v. Becker*, 9th Dist. Medina No. 11CA0066-M, 2012-Ohio-3875, ¶ 34 (concluding that the trial court erred by including the entire value of the football tickets as gross income because, while Morrow derived some personal economic benefit, he did not derive the full value of the tickets as a benefit).

{¶ 22} Similarly, with respect to the value of the use of the vehicle and the cost of vehicle insurance, those portions that relate to business use should be excluded from Morrow's gross income for purposes of modifying a child support obligation.

{¶ 23} Federal tax policy provides support for this view insofar as it differentiates between business and personal use when determining the value of an employee's personal use of an employer-provided vehicle as a working condition fringe benefit. *See* 26 C.F.R. 1.132-5T(b). And further support is found in IRS Publication 463 (2013), in which the Internal Revenue Service informs taxpayers that "[i]f your employer provides you with a car, you may be able to deduct the actual expenses of operating that car for business purposes. The amount you can deduct depends on the amount that your employer included in your income and the business and personal miles you drove during the year." *Id.* at 30.

{¶ 24} With respect to Morrow's use of an employer-provided cell phone, the majority has overly generalized its opinion and painted potential gross income with a broad brush. The Internal Revenue Service has a different view regarding cell phones provided by employers. In Notice 2011-72, Internal Revenue Bulletin No. 2011-38, effective for all taxable years after December 31, 2009, the Internal

Revenue Service informed taxpayers that if an employer provides an employee with a cell phone primarily for noncompensatory business purposes, i.e., the employer has a substantial business reason for providing the cell phone to the employee other than providing compensation to the employee, the value of the cell phone is excludable from the employee's income as a working condition fringe benefit, and the value of the employee's personal use of the phone is excludable from the employee's income as a de minimis fringe benefit. *Id.* at 2. *See also* IRS Publication 15-B, *Employer's Tax Guide to Fringe Benefits*, 11 (2013) (same).

**{¶ 25}** In my view, analysis of whether the value of employer-provided benefits should be included in gross income should consider the purpose for which the employer provided them as fringe benefits and the extent to which they are used for business purposes. Because the majority fails to distinguish between Morrow's business use and personal use with respect to these items and fails to analyze the possibility of a de minimis fringe benefit regarding use of the phone, I respectfully dissent.

_____

Ragner Legal Services, L.L.C., and John C. Ragner, for appellant.

Palecek, McIlvaine, Hoffmann & Morse Co., L.P.A., Linda Hoffman, and Thomas J. Morris, for appellee.

_____